GEORGE AUTENRIETH *et al.*, Respondents, v. ST. LOUIS
AND SAN FRANCISCO RAILROAD COMPANY,
Appellant.

St. Louis Court of Appeals, May 14, 1889.

1. **Practice, Trial:** ELECTING CAUSE OF ACTION. A motion to
require the plaintiff to elect among alleged different causes of
action contained in his petition is properly overruled when it
appears that the different wrongs complained of constitute a con-
tinuous and permanent injury resulting from the same act done
by the defendant.

2. **Damages:** CUTTING OFF ACCESS TO HIGHWAY. Where a railroad
company so constructed its road as to cut off or impair the only
outlet from the plaintiffs' farm to a public road, the measure of dam-
ages is the diminution so caused in the value of the plaintiffs'
farm; and proof of the loss of rents resulting from the same act is
proper for the purpose of indicating the extent of such diminution
in value.

3. **Practice, Trial:** CHARACTER OF ROAD OBSTRUCTED. If the peti-
tion fails to show whether the road obstructed was a public or a
private road, this defect should have been brought to the attention
of the court by a motion to make the petition more definite and
certain, and not by an objection to the admission of any testi-
mony. The failure to file the proper motion must be treated as a
waiver of the defect.

4. **Action:** CHARACTER OF ROAD OBSTRUCTED. Whether the
obstructed roadway was an established public highway, or
was a private way to which the plaintiffs had acquired title by
adverse user or otherwise, as distinguished from a mere license,
the plaintiffs' right of action was maintainable upon the grounds
stated in the petition, and this right, it is admitted, was properly
explained to the jury in the instructions given. The question
whether the roadway was held by one of these titles, or by a mere
license from the owner of the land, was properly left to the jury
upon substantial evidence from either side, and their finding for
the plaintiffs on that question cannot be disturbed.

Autenrieth v. St. L. & S. F. Ry. Co.

5. **Damages** : BEST POSSIBLE CROSSING. It is no answer to an action for injury accruing to the plaintiffs by the building of the defendant's road, that the best possible crossing was made for the plaintiffs, considering the topography and physical surroundings present. The plaintiffs had no pecuniary interest in the betterments of the company, and the company was not compelled, by any law, to build the road, And if the crossing made by the company still left the plaintiffs in a much worse condition than before, and largely depreciated their lands, their right of action was unquestionable.

6. **Measure of Damages** : INSTRUCTIONS ASKED BY BOTH PARTIES. The court erroneously instructed that the plaintiffs could only recover the actual damages sustained prior to the commencement of the suit. The true measure of damages was the difference, if any, in the value of the land before and after the building of the railroad. But the error can work no reversal, because the instructions were asked for by both parties.·

*Per Rombauer, P. J., concurring*:

7. **Public Highway** : PRIVATE EASEMENT. The evidence is insufficient to show that the road in question had become a highway by adverse use of the public, but is sufficient to show a private easement of way in the plaintiffs, which would entitle them to an action for the obstruction complained of. The injury, under the conceded facts, was of a permanent character, and the amount of the plaintiffs' recovery is determined by the depreciation, caused by the obstruction, in the value of the land. The recovery in this action is, therefore, necessarily a bar to any further action, either for temporary or permanent injuries.

*Appeal from the St. Charles Circuit Court.*—HON. WILLIAM W. EDWARDS, Judge.

AFFIRMED.

*John O'Day* and *E. D. Kenna*, for the appellant.

The plaintiffs' petition, having failed to allege the obstruction or interference with either a public highway or a private way, did not state facts sufficient to constitute a cause of action. There was not sufficient evidence to show an adverse user, from which a dedication to the public could be presumed. *Brinck v. Collier*, 56 Mo. 161; *Irwin v. Dixon*, 9 How. 10; Dill. Mun. Cor.

604; *Stacey v. Miller*, 14 Mo. 478; *Smith v. Railroad*, 25 A. & E. R. R. Cas. 208; Angell on Highways, 113; *Harding v. Loftus*, 14 Cal. 642; *Warren v. Jacksonville*, 15 Ill. 241. Even though the evidence would support the theory that the road in question was a public highway, yet the plaintiff is not entitled to recover, as no special damages were alleged or proven. And the matters and things, of which the plaintiffs complain, were of like injury to others who used the road as well as to the plaintiffs. *Bailey v. Culver*, 84 Mo. 531. There was no evidence to support the theory that the "outlet" in question was a private way. Its use was in pursuance of a parol license, and no other right thereto existed. It is essential and necessary in order to prove a prescriptive right of way that its use has been exclusive. The evidence in this case disclosed that the road had been used by a number of persons, and, in fact, by all who chose to do so. *Luce v. Corley*, 24 Wend. 451; 6 Wait's Act. & Def. 452; *House v. Montgomery*, 19 Mo. 175; *Hewins v. Smith*, 11 Metc. 241; *Badeau v. Mead*, 14 Barb. 339. Even though it should be held that it was a public road or private way, yet the appellant is not liable in damages, as it constructed the best crossing which was practicable under all the circumstances.

BIGGS, J., delivered the opinion of the court.

The record in this case shows that, in 1881, the defendant constructed its railroad through St. Louis county; that the defendant secured the right of way for its road through the lands of Mrs. Keating, and those of Peter Huthmacher, adjoining on the east, and that the defendant's road was constructed through these lands from east to west. There was a public road running east and west along the north line of Mrs. Keating's and Huthmacher's land. The plaintiffs owned a farm south of Mrs. Keating's and Huthmacher's land,

and situated in the bend of the Meramec river,. and the only outlet from the plaintiffs' farm to a public highway was over a passway or road leading from the plaintiffs' farm, and extending north on or near the dividing line between the lands of Mrs. Keating and Huthmacher, to the public road, known as the "Big Bend road." The railroad, where it crosses this roadway, skirts the southern slope of a hill, and the approach of the road from the south to the line of the defendant's railroad, is up a very steep grade. The proper construction of the railroad at this point required a cut about twelve feet deep, measuring from the north side of the excavation, but was only a few feet below grade on the south side. The testimony of the two civil engineers was to the effect that it was a physical impossibility to make an overhead crossing at this place, and in order to make a crossing on a grade with the railroad track, it would have required a very deep excavation on the north side, extending for a long distance through solid rock, and that such a crossing would have cost a great deal more than the plaintiff's farm was worth. In order to establish a crossing for this road, which the plaintiffs claim to own, the defendant constructed a new road, commencing at the intersection and leading west along both sides of its right of way for a distance of one hundred yards, and at that point constructed a crossing which has been used by the plaintiffs and their tenants since that time.

On the twentieth day of October, 1887, the plaintiffs brought this suit in the circuit court of St. Louis county, which was by change of venue taken to the circuit court of St. Charles county.

For a cause of action, they allege that the defendant in constructing its railroad obstructed the highway above referred to and rendered the crossing of the railroad dangerous, impracticable and inconvenient; that

Vol. 36—17

the plaintiffs were lawfully entitled to use this road for the purpose of getting to and from a public highway to their farm, and that this was the only passway the plaintiffs had, and that on account of the character of the crossing of the railroad and the change made in the road, the plaintiff's farm had been greatly diminished in value, to-wit, in the sum of fifteen hundred dollars, and that in addition to this, the plaintiffs, since the year 1880, had lost ,in the way of rents, the annual sum of one hundred dollars. The plaintiffs prayed judgment for fifteen hundred dollars damages and also one hundred dollars for each year for loss of rents. The defendant filed a motion in which it claimed that the plaintiffs had joined in one count several separate and distinct causes of action and asked the court to require the plaintiffs to elect on which single cause of action they would go to trial. The court overruled this motion and the defendant having properly preserved its exception, the correctness of this action presents a question at the threshold of the case for our determination.

The ascertainment of the nature and character of the plaintiffs' action will furnish a satisfactory solution of the question raised by this motion. If the obstruction complained of by the plaintiffs and if the damage inflicted on the plaintiffs' property rights, are of a permanent character, and if the continuance of the obstruction is necessarily a continuous injury, then the plaintiffs' whole injury is suffered at once, and it presents but one cause of action. *Van Hoozier v. Railroad*, 70 Mo. 145; *Dickson v. Railroad*, 71 Mo. 575.

The character of the obstruction is not directly averred, but the fair inference is (from the facts stated), that the obstruction is of a permanent character, and that the maintenance of the nuisance will necessarily prove a continuous source of injury to the plaintiffs' land. In such a case, the entire damage suffered by the plaintiffs ought and must be adjusted in one proceeding.

The measure of damages in such a case would be the difference in the market value of the land, before and after the building of the defendant's road. *Brown v. Railroad*, 80 Mo. 457; *Benson v. Railroad*, 78 Mo. top p. 512. The claim made by the plaintiffs in their petition for compensation for loss of rents, for the various years, could not possibly change the character of the action or the rules of law governing it. The proof of such loss on the trial would be perfectly competent, but only for the purpose of establishing the plaintiffs' damages growing out of the depreciation of the value of their farm.

But if we concede that the obstruction was only temporary, and that the injury to the plaintiffs' property would not necessarily continue, and that the plaintiffs were confined in this action to the damages sustained by them to the time the suit was begun, yet the defendant's motion was properly overruled. In such a case the plaintiffs might have brought a suit for each day the obstruction was allowed to remain, or else they might have waited (as was done), until they had suffered a series of injuries, and then sought redress for them in one action. *Bird v. Railroad*, 30 Mo. App. 374. There can be no warrant for saying, in such a case, that the plaintiffs' damages should be divided into yearly periods, and that therefore the plaintiffs should be compelled to allege their damages for each year in a separate count. Why not divide the damages into monthly periods? In any view we may take of this case, the defendant's motion was properly overruled.

There was a trial of the case before a jury, resulting in a verdict and judgment for the plaintiffs. The defendant, having failed to obtain a new trial, brings the case to us on appeal, and alleges the following reasons why the judgment should be reversed.

I. Counsel for the defendant urged that the petition fails to state a cause of action, because the plaintiffs have failed to allege the character of the road

obstructed; and that from the averments, it can not be determined whether the road was a public highway or a private way. For this reason the defendant objected to any testimony. This exception cannot avail the defendant anything. The petition is defective in the respect indicated, but the attention of the trial court should have been called to this, by a motion to make the petition more definite and certain. The defendant having failed to do this, it must be presumed and held that this defect or informality in the petition was waived.

II. That the evidence was not sufficient to show a dedication of the road as a public highway, and there was no evidence to support the theory that the road was a private way and belonged to the plaintiffs. We will consider these two assignments together. There was no direct evidence in the case that this easement had ever been granted to the plaintiffs or their grantors; nor was there any evidence that the road had ever been by proper proceedings declared a public highway, or that it had ever been recognized as such by the county authorities; that is, it had never been worked or repaired at public expense. Whether it was a private road, belonging to the plaintiffs, or a public highway, depended, in either case, on title by prescription. It is a difficult matter to say or determine from the evidence preserved in this record, whether the easement is a public or private one. But it can be safely said, that the testimony leaves but little doubt that it was in fact one or the other; and it can make no possible difference to the defendant, whether the road is public or private. If it is a public highway, then we think the evidence is sufficient to show a right of action in the plaintiffs, because this road was the only outlet from their farm, and that they, for this reason, suffered special injury or damage growing out of the obstruction. If it was a private road, and the plaintiffs had obtained title thereto by adverse user, and the use or occupation was a matter of right, as distinguished from a mere license,

then the right of the plaintiffs to maintain this suit cannot be questioned. . The plaintiffs' right to recover on either one of the two theories was submitted to the jury under instructions that properly declared the law. That these instructions are correct is not challenged, but is admitted by counsel for the defendant. Whether there was any substantial evidence to authorize the instructions, is the only question for our determination.

The building of the railroad across the roadway, and the deflection of the latter by the defendant in order to secure a crossing did undoubtedly (under the evidence) have a tendency to depreciate the value of the plaintiffs' farm. The crossing itself was not only dangerous and difficult of access, but the road, as changed by the defendant, extended along either side of the track, and within fifty feet of it, for the distance of one hundred yards, making this part of the road very dangerous on account of moving trains. And on account of the situation of the ground, and the fact that telegraph poles were planted in the middle or near the sides of the passway, it was only possible to haul small loads over the road.

There was sufficient evidence to authorize the court to submit the questions to the jury, whether this had become a public road by prescription or whether the plaintiffs had acquired title, or the legal right to use the same, by an adverse occupation. There was no question but that the road had been used for many years not only by the plaintiffs since their purchase in 1865, but long prior to that time by the plaintiffs' immediate grantor. The only question was as to the character of the use. If the use was under a license from Mrs. Keating, the owner of the servient estate, then the fact that the plaintiffs and their grantors used the road, and that the public was in the habit of travelling over it, as the evidence shows, would not be sufficient to vest

either in the plaintiffs or the public a right to the ease-
ment. But on the other hand, if the use by the plain-
tiffs, or the public, was adverse, continuous, and as a
matter of right, for the period of ten years prior to the
building of the defendant's railroad, then this road was
either a public highway or was a private road belonging
to the plaintiffs.

George Autenrieth, one of the plaintiffs, testified,
that he bought the farm from John Hoffman in 1865;
that since that time he had used this road as an outlet
from his farm to the public road; that he had no
other passway, and that his right to use the road had
never been questioned; that the public to some extent
had used the road during the time. John Hoffman, the
original owner, testified that he sold the land to the
plaintiffs in 1865, and that he and the public had used
this road for many years before this. He said that it
was always considered a public road. There was other
testimony as to the use of the road, but the portions
referred to are sufficient for the purposes of this discus-
sion. On the other hand, P. D. Keating, a son of Mrs.
Keating, the owner of the land over which the road
runs, testified that the plaintiffs had never bought or
paid for this road, but had only used it with the per-
mission of his mother. This evidence made an issue of
fact, as to the character of the plaintiffs' occupation or
use of the road, and the jury having found this issue
for the plaintiffs, we cannot interfere.

Our conclusion is that there was substantial evi-
dence tending to establish a right of action in the plain-
tiffs, and as there was no misdirection of the jury as to
the law in the case, we will have to rule against the
defendant on this assignment.

III. The last position assumed by the defendant
is, that if it be conceded that the road is a public high-
way or a private road, and that the defendant obstructed
and deflected the same in the construction of its road,
yet it is not liable in damages, because it constructed
the best crossing possible under all the circumstances.

The answer to this is, that the plaintiffs had no pecuniary interest in the defendant's railroad, and could not possibly derive any profit from its operation, and we know of no law that would prevent them from recovering from the defendant the damages sustained by them on account of the obstruction of their road. If the defendant was not willing to pay the damages necessarily arising from the construction of its railroad, there was nothing in the law to compel it to embark in the enterprise.

IV. The only substantial error committed by the court was in the instruction as to the measure of damages. Both the plaintiffs and the defendant asked the court to instruct the jury that the plaintiffs could only recover the actual damages sustained prior to the commencement of the suit. We think that the correct rule for measuring the damages in this case was the difference, if any, in the value of the land before and after the building of the railroad.

The testimony in this case shows that the obstruction complained of is permanent in its character, and that the plaintiffs' damages are certain and continuous. *Chouteau v. City of St. Louis*, 8 Mo. App. 48; *Pinney v. Berry*, 61 Mo. 359; *Benson v. Railroad*, 78 Mo. 512; *Van Hoozier v. Railroad*, 70 Mo. 145; *Dickson v. Railroad*, 71 Mo. 575. The entire damage in such cases *must* be recovered in one action.

In overflow cases arising from the negligent construction of railroads, the rule is different, and prospective damages can not be shown, for the reason that the injury is not certain and continuous. During one year, there might be no overflow at all, and the next year the land-owners' crops might be swept away by disastrous floods. Under such circumstances, it is very apparent that an attempt by a court to ascertain and determine permanent damages to the freehold would be a mere matter of speculation. But, in the case at bar, the

obstruction is permanent, and the injury to the plaintiffs' property rights is certain and continuous, and the jury should have been instructed accordingly. But this error can not work a reversal of the case, because the trial court only did what the plaintiffs and the defendant asked should be done.

The judgment of the circuit court will have to be affirmed. All the judges concurring, it is so ordered.

ROMBAUER, P. J., delivered a concurring opinion.

I am of opinion that the evidence in this case is insufficient to show, under the decision in *Brinck v. Collier*, 56 Mo. 160, that the road in question had become a highway, by adverse use on part of the public. At the same time, I am of opinion that it is sufficient to show a private easement of way in favor of the plaintiffs, and those under whom the plaintiffs claim. For the obstruction of such easement, the defendant is liable.

The injury to the way under the conceded facts was of a permanent character. The defendant's experts testified that the road could not be re-established at or convenient to the old crossing, owing to the topography of the ground, while the plaintiffs gave evidence that they could not obtain an equally advantageous outlet, without an outlay disproportionate to the value of the farm, and vastly exceeding the amount of the plaintiffs' recovery in the case. In such event, the amount of the plaintiff's recovery is determined by the depreciation caused by the obstruction in the value of the land. It is true the case was put to the jury on another theory as to the measure of damages, but upon one admittedly more favorable to the defendant; hence the defendant cannot complain. As the plaintiffs' petition claims damages for permanent injuries, and as they might have recovered such damages in this action, their recovery is necessarily a bar to any further action either for temporary or permanent injuries.